UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Civil Action No. |
| ) | |
| TOWN OF GARNER, NORTH CAROLINA,   ) | |
| and the TOWN OF GARNER BOARD OF   ) | |
| ADJUSTMENT,   ) | |
| ) | |
| Defendants.   ) | |

## COMPLAINT

The United States of America alleges:

### Jurisdiction

1. This action is brought by the United States to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act"), 42 U.S.C. §§ 3601-3619.

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3614(a). The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper under 28 U.S.C. § 1391(b), because the claims alleged herein occurred in the Eastern District of North Carolina.

### Defendants

4. The Town of Garner (the "Town") is a political subdivision of the State of North Carolina within the Eastern District of North Carolina and is organized under the laws of the

State of North Carolina. Pursuant to the authority granted it by the State of North Carolina, the Town exercises zoning authority over land within its borders. The Town's zoning regulations are set forth in an ordinance titled the "Unified Development Ordinance" ("Ordinance").

5. The Town of Garner Board of Adjustment ("Board of Adjustment") is a duly organized board of the Town that, among other things, hears and decides variance requests from the terms of the Town's Ordinance.

6. The Ordinance does not include a policy or procedure concerning reasonable accommodations in rules, policies, practices or services that may be necessary to afford persons equal opportunities to use and enjoy dwellings.

## Oxford House, Inc.

7. Oxford House, Inc. ("OHI") is a non-profit corporation with its principal place of business in Maryland. OHI charters and assists in the development, throughout the United States, of residential homes for persons recovering from addictions to alcohol an illegal drugs, which are referred to generically as "Oxford Houses." OHI requires that each Oxford House prohibit the use by residents of illegal drugs or alcohol, and enforce the prohibition by mandatory drug testing. A resident found to have used drugs or alcohol is required to move out of the house immediately.

8. The purpose of an Oxford House is to enable its residents to reinforce and encourage their mutual commitment to recovery by assisting one another to resist temptations to resume use of alcohol and illegal drugs, and monitoring one another for signs of such use. Each Oxford House is required to administer its affairs through democratically elected officers, to pay for rent and other household expenses, and to approve the admission of new residents by a

2

majority vote of at least 80%.

9. While the minimum number of residents to which OHI will issue a charter is six, the organization believes that homes made up of eight to twelve residents are more likely to be successful, for two reasons. First, mutual support of continued recovery is enhanced by a larger number of residents. Second, each house must be financially self-sustaining, and the financial stability of smaller houses is threatened by unexpected departures.

Factual Allegations

10. In 2003, the North Carolina Coordinator for OHI, Kathleen Gibson, determined that there was a need for an additional Oxford House in the suburban area east of Raleigh. In accordance with OHI's established procedures, Ms. Gibson asked a real estate investor, with whom OHI had worked previously, to locate a suitable house in this area. The investor found a six-bedroom single family house located at 117 Broughton Street in the Town of Garner ("the Broughton St. house"). Ms. Gibson agreed that the house was suitable, and the investor purchased the home with the intention of leasing it to an Oxford House to be established by OHI.

11. Ms. Gibson determined, based on the number and sizes of the bedrooms at the Broughton St. house, that the appropriate number of residents for the house was eight. Having been issued a charter by OHI, the house opened with eight residents early in 2004. Since that time, the number of residents in the house has varied between six and eight.

12. At all times material to this Complaint, the residents of the Broughton St. house have included at least two elected officers.

13. Each of the past and present residents of the Broughton St. house has been handicapped within the meaning of 42 U.S.C. § 3602(h).

3

Case 5:09-cv-00216-FL   Document 1   Filed 05/19/09   Page 3 of 10

14. The Broughton St. house is a dwelling within the meaning of 42 U.S.C. § 3602(b).

15. Under the Ordinance, a "family" is a permitted use in all residential areas. Prior to May 2005, the definition of "family" in the Ordinance included the following language: "[U]p to eight persons, including six or fewer persons with a disability or handicap and not to exceed two staff residents residing in a dwelling shall be considered to be a family."

16. In or about November 2004, a neighbor of the Broughton St. house, having learned from a resident that the house was being operated as a residence for recovering addicts, complained to the Town. On or about November 15, 2004, the Town's zoning enforcement officer, Reginald Buie, wrote OHI a letter stating that the Broughton St. house was in violation of the Ordinance, and instructing it to cease operation.

17. OHI's attorney, Gregory Heafner, contacted the Town Attorney, William Anderson. Mr. Heafner stated that the elected officers of the Broughton St. house should be counted as staff members within the meaning of the Ordinance quoted in paragraph 15, supra. Mr. Anderson disagreed, saying that the Ordinance limits the number of residents with disabilities to no more than six.

18. On or about December 4, 2004, Mr. Heafner wrote Mr. Anderson a letter requesting that the Town classify the Broughton St. house as a family for purposes of the Ordinance. In a subsequent letter dated February 22, 2005, Mr. Heafner repeated this request, requesting a reasonable accommodation pursuant to 42 U.S.C. § 3604(f)(3)(B).

19. In May 2005, the Town adopted a number of amendments to the Ordinance, among which was a revision of the definitions pertinent to the Broughton St. house. The portion

4

of the definition of "family" quoted in paragraph 15, <u>supra</u>, was deleted, and the following definition of "Disabled or Handicapped Home" was added:

> A residential arrangement which does not meet the definition of group care home and consists of a single family dwelling unit with a single family kitchen facility housing up to six (6) persons with a disability or handicap.

20. On or about July 18, 2005, Mr. Buie sent the then-president of the Broughton St. house a second letter stating that the house was in violation of the amended Ordinance, because seven men were in residence at that time. The letter gave the residents 30 days to vacate.

21. On or about August 16, 2005, OHI filed a timely complaint against the Town with the United States Department of Housing and Urban Development ("HUD") pursuant to 42 U.S.C. § 3610(a), alleging discrimination in housing on the basis of disability.

22. The Town subsequently agreed to permit OHI to appeal the July 18 finding to the Board of Adjustment and to present its arguments at a hearing. The hearing was held on February 23, 2006; Mr. Heafner and Ms. Gibson testified concerning the nature of the Oxford House program and set forth the legal and factual arguments for an accommodation. The Board of Adjustment took no action at the hearing, but subsequently issued an eight-page decision denying the appeal. This document (1) recited the applicable provisions of the zoning ordinance, (2) found the Oxford House in violation, and (3) expressed the legal conclusion that the relief requested by OHI would constitute a "use variance," which, according to the Board of Adjustment, it was not permitted by North Carolina law to grant. Because of this legal conclusion, the Board of Adjustment did not consider the factual merits of the argument made in support of the request for a reasonable accommodation.

5

23. On or about January 2, 2008, another attorney for OHI, Mark Hudson, wrote a letter to William Anderson reiterating Oxford House's request for a reasonable accommodation. The Town did not respond substantively to this letter.

### Count One

24. The allegations in paragraphs 1-23, above, are incorporated herein by reference.

25. Pursuant to 42 U.S.C. § 3604(f)(3)(B), municipalities are required to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling. The Defendants have failed or refused to recognize this obligation.

26. The Defendants, through the actions described above, have:

a. discriminated in the rental of, or otherwise made unavailable or denied, dwellings to renters or prospective renters because of handicap, in violation of 42 U.S.C. § 3604(f)(1);

b. discriminated against persons in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection with a dwelling, because of handicap, in violation of 42 U.S.C. § 3604(f)(2); and

c. failed or refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may have been necessary to afford persons with handicaps an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

27. The Defendants' discriminatory actions were intentional, willful, and taken in disregard for the fair housing rights of others.

6

28. The Defendants' conduct described above constitutes:

    a. a pattern of practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. § 3614(a); or

    b. a denial to a group of persons of rights granted by the Fair Housing Act that raises an issue of general public importance under 42 U.S.C. § 3614(a).

29. Persons who may have been the victims of the Defendants' discriminatory housing practices are aggrieved persons as defined in 42 U.S.C. § 3614(i), and may have suffered injuries as a result of the Defendants' conduct.

## Count Two

30. The allegations in paragraphs 1-23, above, are incorporated herein by reference. By the actions described above, the Defendants have failed or refused to make a reasonable accommodation in their rules, policies, practices, or services, which may have been necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling.

31. The Defendants, through the actions described above, have:

    a. discriminated in the rental of, or otherwise made unavailable or denied, dwellings to renters or prospective renters because of handicap, in violation of 42 U.S.C. § 3604(f)(1);

    b. discriminated against persons in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection with a dwelling, because of handicap, in violation of 42 U.S.C. § 3604(f)(2); and

    c. failed or refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may have been necessary to

7

afford persons with handicaps an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

32. The Defendants' discriminatory actions were intentional, willful, and taken in disregard for the fair housing rights of others.

33. The Defendants' conduct described above constitutes:

a. a pattern of practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. § 3614(a); or

b. a denial to a group of persons of rights granted by the Fair Housing Act that raises an issue of general public importance under 42 U.S.C. § 3614(a).

34. OHI and the past and present residents of the Broughton St. house have been the victims of the Defendants' discriminatory practices, and are aggrieved persons as defined in 42 U.S.C. § 3602(i). These persons have suffered damages as a result of the Defendants' conduct.

WHEREFORE, the United States prays that the Court enter an ORDER that:

1. Declares that the Defendants' actions described above constitute violations of the Fair Housing Act;

2. Enjoins the Defendants, their agents, employees, assigns, successors, and all other persons in active concert or participation with them, from violating the Fair Housing Act by discriminating on the basis of disability;

3. Requires the Defendants, their agents, employees, assigns, successors and all other persons in active concert or participation with them, to make reasonable accommodations in their policies, practices, rules, or services as required by the Fair Housing Act, and to adopt procedures for considering requests for such accommodations;

8

4. Requires the Defendants, as a reasonable accommodation pursuant to 42 U.S.C. § 3604(f)(3)(B), to permit the continued operation of the Broughton St. house as a residence for up to eight persons recovering from addictions;

5. Awards monetary damages pursuant to 42 U.S.C. § 3614(d)(1)(B) to fully compensate each person aggrieved by the Defendants' discriminatory housing practices for their injuries caused by such discriminatory conduct; and

6. Assesses a civil penalty against the Defendants in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General

GEORGE E.B. HOLDINGS
United States Attorney
Eastern District of North Carolina

FOR R.A. RENFER, JR.
Civil Chief
Eastern District of North Carolina
310 New Bern Avenue
Federal Building, Suite 800
Raleigh, North Carolina 27601-1461

*Loretta King*
LORETTA KING
Acting Assistant Attorney General
Civil Rights Division

DONNA M. MURPHY
Acting Chief
Housing and Civil Enforcement Section

MICHAEL S. MAURER
Deputy Chief
HARVEY L. HANDLEY
Attorney
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue
The Northwestern Building
Washington, D.C. 20530
Tel.: 202-514-4756
Facsimile: 202-514-1116